# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICAELA BRACAMONTE and TIFFANY FORTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendants. | Civil Action No:<br><br>**CLASS-ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Micaela Bracamonte and Tiffany Forte ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against USAA Casualty Insurance Company ("USAA Casualty") and Garrison Property and Casualty Insurance Company ("Garrison") (collectively, "Defendants" or "USAA"), and in support thereof state the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiffs and all members of the Classes, as defined herein, who were named insureds under USAA automobile policies issued in the State of New York for private passenger automobiles (the "Policy" or "Policies"), who made a claim for comprehensive or collision loss under their Policy that was adjusted and paid by USAA as a total

1

loss[1], and who were not paid full purchasing fees and taxes, defined herein, as part of their total loss insurance claim.

2. The standardized form Policy allows USAA to adjust and settle a first-party motor vehicle total loss claim via a monetary payment of "Actual Cash Value" or "ACV."

3. Upon information and belief, Defendants systematically underpaid not just Plaintiffs, but thousands of other putative Class members under the Policies. Defendants owe their insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.[2]

4. ACV is defined by the USAA Policy as "the amount that it would cost, at the time of loss, to buy a vehicle of the same make, model, body type, model year, and equipment, with substantially similar mileage and physical condition." (Exhibit A, Policy at 20 (emphasis omitted)).

5. New York insurance regulations define "Actual Cash Value" for first-party total vehicle loss claims and require that an insurer pay all amounts, which necessarily includes all taxes, costs and fees, for which the claimant can reasonably be expected to pay to replace the total loss vehicle with an item substantially identical to the damaged vehicle. N.Y. Comp. Codes R. & Regs, tit. 11 § 216.6(b)(2) ("Regulation 64").

6. Under the Policy and New York law, the ACV of the insured vehicle includes all mandatory taxes as well as regulatory fees imposed by the State of New York, including but not limited to, registration, title, Metropolitan Commuter Transportation District ("MCTD") fees, use tax, sales tax, plate and inspection fees (collectively, the "Purchasing Fees").

7. Plaintiffs and the other Class members suffered total losses of their vehicles, and Defendants purported to pay them Actual Cash Value in settlement of their claims.

---

[1] A total loss occurs when a vehicle is considered economically impractical to repair or when the cost to repair the vehicle equals or exceeds the vehicle's ACV on the date of the loss.

[2] Comprehensive and collision coverage protects vehicles from unexpected non-collision incidents like theft, animal damage, falling trees, and weather damage and damage to a vehicle as a result of a collision with another vehicle or object.

2

8. Defendants, however, failed to pay the full amount of Purchasing Fees to Plaintiffs and other Class members, and thereby breached their contracts with Plaintiffs and other Class members.

9. This lawsuit is brought by Plaintiffs on behalf of themselves and all other similarly situated insureds of Defendants' automobile Policies issued in the State of New York that have suffered damages due to Defendants' practice of failing to pay full Purchasing Fees to claimants. Such payments are required by applicable New York law and Defendants' insurance Policies issued to Plaintiffs and members of the Classes, defined herein.

10. USAA's failure to pay full Purchasing Fees for first-party total loss claims is a breach of the Policy and also violates New York law. The Purchasing Fees at issue here are to be paid by USAA in addition to USAA's assessment and payment of the value of the total loss vehicle. Plaintiffs and the Classes dispute USAA's failure to pay the full Purchasing Fees as part of USAA's payment for their total loss claims, but do not dispute USAA's assessment and payment of the amount of value of their total loss vehicle.[3]

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiffs are members of the putative Classes defined herein, each of which consists of at least 100 members, and they and the Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the § 1332 exceptions apply to this claim.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendants are subject to personal jurisdiction in this district. Indeed, Defendants

---

[3] USAA refers to the amount of value of the total loss vehicle in the "Market Valuation" reports USAA uses from CCC Intelligence Solutions, Inc. as "Base Vehicle Value" and "Adjusted Vehicle Value".

3

have offices and employees in this district, use or possess real property in this district, including at their corporate offices located at 529 Main Street, Highland Falls, NY 10928, and regularly conduct business within this district, including the issuing of USAA automobile insurance Policies and the processing of total loss claims under USAA automobile insurance Policies.

## THE PARTIES

13. At all times material hereto, Plaintiff Bracamonte was domiciled in Kings County, New York, and was a citizen of the State of New York.

14. At all times material hereto, Plaintiff Forte was domiciled in Kings County, New York, and was a citizen of the State of New York.

15. Defendant USAA Casualty Insurance Company is a foreign corporation insurance company incorporated in Texas with its principal place of business and headquarters located in San Antonio, Texas. USAA Casualty is a subsidiary of United Services Automobile Association and is licensed to conduct business in New York.

16. Defendant Garrison Property and Casualty Insurance Company is a foreign corporation insurance company incorporated in Texas with its principal place of business and headquarters located in San Antonio, Texas. Garrison is a subsidiary of United Services Automobile Association and is licensed to conduct business in New York.

## FACTUAL ALLEGATIONS

17. Defendants utilize the same standard form Policy within the State of New York for private passenger automobile insurance. *See* Exhibit A. The standardized Policy language related to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by USAA in New York. The Policy language is standardized in all relevant and material ways.

18. Under the USAA Policy, USAA is authorized to elect to pay ACV in the event of a total loss. This election allows Defendants to avoid paying for loss when the cost to repair or

4

replace exceeds the value of the vehicle.[4]

19. "Actual cash value" is defined in the USAA Policy, with respect to "Collision" and "Comprehensive" coverages, as "the amount that it would cost, at the time of loss, to buy a vehicle of the same make, model, body type, model year, and equipment, with substantially similar mileage and physical condition." (Exhibit A, Policy at 20 (emphasis omitted)).

20. The USAA Policy does not further define Actual Cash Value as: (a) excluding the Purchasing Fees from Actual Cash Value; (b) deferring payment of the Purchasing Fees for any purpose whatsoever; (c) requiring an insured to obtain a replacement vehicle; (d) requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving the Purchasing Fees; or (e) linking the amount of Purchasing Fees to a particular replacement vehicle.

21. In the event of a total loss, when calculating their valuations and claims payments, Defendants systematically employ a routine "total loss settlement process." The process has no material differences relevant to this action.

22. This process involves obtaining a "Market Valuation" report from CCC Intelligence Solutions, Inc. ("CCC"), and then using and relying upon the valuation provided to determine the benefit payment under the insured's Policy.

23. Each Defendant employed this total loss settlement process when handling Plaintiffs' and members of the Classes' total loss claims.

**Plaintiff Bracamonte's Total Loss Claim**

24. At all times material hereto, Plaintiff Bracamonte insured a 2021 Toyota Venza 4D, VIN # JTEAAAH3MJ016829.

---

[4] The USAA Casualty Policy, with respect to "Collision" and "Comprehensive" coverages, defines "Loss" as: "Loss means direct and accidental damage to the operational safety, function, or appearance of your covered auto, including its equipment. Loss does not include any diminution in value that remains after the damaged or stolen property or parts thereof have been repaired or replaced." (Exhibit A, Policy at 20 (emphasis omitted)).

25. At all times material hereto, Plaintiff Bracamonte insured the insured vehicle under an insurance Policy issued by Defendant USAA Casualty.

26. On or about April 1, 2021, Plaintiff Bracamonte was involved in an accident while operating the insured vehicle.

27. As a result of the accident, Plaintiff Bracamonte filed a claim for first-party property damage with Defendant USAA Casualty, claim number 006058536-044.

28. USAA Casualty declared Plaintiff Bracamonte's vehicle to be a total loss.

29. USAA Casualty elected to pay Plaintiff Bracamonte the Actual Cash Value of her insured vehicle.

30. USAA Casualty provided a CCC Market Valuation report to Plaintiff Bracamonte on or around July 26, 2021. *See* Exhibit B.

31. USAA Casualty valued Plaintiff Bracamonte's total loss claim at $35,342.35 and paid Plaintiff Bracamonte $35,342.35. *See* Exhibit C, Settlement Summary.

32. Defendant USAA Casualty's payment of $35,342.35 included $75.00 in "Fees". USAA Casualty did not include a breakdown of these "fees". USAA Casualty's payment also included a tax, which USAA Casualty described as "State Sales Tax" of $2,956.35. *Id.* The balance of USAA Casualty's payment was for the amount of value of the total loss vehicle. *Id*. However, the $35,342.35 paid to Plaintiff Bracamonte did not include the full amount of the Purchasing Fees. At a minimum, USAA Casualty's payment did not include the Purchasing Fees described herein at paragraphs 46, 47 and 50-52.

**Plaintiff Forte's Total Loss Claim**

33. At all times material hereto, Plaintiff Forte insured a 2008 Cadillac CTS, VIN # 1G6DG577380203606.

34. At all times material hereto, Plaintiff Forte insured the insured vehicle under an insurance Policy issued by Defendant Garrison.

6

35. On or about June 20, 2020, Plaintiff Forte's insured vehicle was involved in an accident.

36. As a result of the accident, Plaintiff Forte filed a claim for first-party property damage with Garrison, claim number 037656014-23.

37. Garrison declared Plaintiff Forte's vehicle to be a total loss.

38. Garrison elected to pay Plaintiff Forte the Actual Cash Value of her insured vehicle.

39. Garrison provided a CCC Market Valuation report to Plaintiff Forte on or around March 24, 2021. *See* Exhibit D.

40. Garrison valued Plaintiff Forte's total loss claim at $6,388.40 and paid Plaintiff Forte $6,388.40. *See* Exhibit E, Claim and Payment Information.

41. Defendant Garrison's payment of $6,388.40 included two itemized fees, which Garrison described as a "Plate Transfer Fee" of $25.00 and a "Title Fee" of $50.00, and included a tax, which Garrison described as "Sales tax" of $555.40. *Id.* The balance of Garrison's payment was for the amount of value of the total loss vehicle. *Id*. However, the $6,388.40 paid to Plaintiff Forte did not include the full amount of the Purchasing Fees. At a minimum, Garrison's payment did not include the Purchasing Fees described herein at paragraphs 46, 47 and 50-52.

**Mandatory Vehicle Purchasing Fees**

42. The amount it costs to buy a vehicle in New York includes mandatory Purchasing Fees, which are taxes and fees imposed by New York law.

43. Sales tax is a mandatory cost that must be paid to buy any vehicle in the State of New York. Tax Law § 1105.

44. The sales tax in Kings County New York Zip Code 11237 to buy a vehicle is 8.875% (State tax rate of 4.00%, local city tax rate of 4.50% and Metropolitan Commuter Transportation District surcharge of 0.375%).

45. The sales tax in Queens County New York Zip Code 11692 to buy a vehicle is

7

8.875% (State tax rate of 4.00%, local city tax rate of 4.50% and Metropolitan Commuter Transportation District surcharge of 0.375%).

46. New York law also provides for individual counties to impose a vehicle use tax. *See* Tax Law § 1201; Tax Law § 1202. The New York State Department of Motor Vehicles collects this tax when a vehicle is registered or has its registration renewed. Tax Law § 1240. The Department of Motor Vehicles issues a fee schedule outlining the dollar amount of the vehicle use tax for each individual county. *See* Exhibit F (MV-202). The county use tax for Kings County is $15.00. *Id*.

47. In addition to the county use tax, New York law requires an additional Metropolitan Commuter Transportation District ("MCTD") Supplemental Registration Fee for residents living in the counties that make up the MCTD. N.Y. Veh. & Traf. Law § 499-a. The fee imposed on these residents is $25.00. *See* Exhibit F (MV-202).

48. New York law requires that all vehicles be properly titled in order to be lawfully driven on New York roadways. *See* N.Y. Veh. & Traf. Law § 2104. New York requires the seller of the vehicle to issue an assignment and warranty of title to the buyer. *See* N.Y. Veh. & Traf. Law §§ 2113-14. The buyer then uses the assigned title to make an application for a new title in his or her own name. *Id.* § 2113(b). The fee imposed for filing an application for a certificate of title is $50. *See* N.Y. Veh. & Traf. Law § 2125.

49. New York law requires that all vehicles have proper license plates (or tags) in order to be legally driven on New York roadways. *See* N.Y. Veh. & Traf. Law § 401. The license plate fee is $25. *Id.*; *see* Exhibit F (Form MV-202). The fee to transfer license plates or tags is $10. N.Y. Veh. & Traf. Law § 420; *see* Exhibit F (Form MV-202).

50. In addition to title and transfer fees, New York law requires that all motor vehicles registered in the state undergo a vehicle inspection. N.Y. Comp. Codes R. & Regs. tit 15 § 79.2.

51. All vehicles are required to have a safety inspection performed whenever it is registered, including a transfer of registration. *See* N.Y. Veh. & Traf. Law § 301. Such inspections for passenger vehicles are $10.00 per vehicle. *See* Exhibit G (Form VS-77).

52. All motor vehicles registered in New York must also pass an appropriate emissions inspection. N.Y. Comp. Codes R. & Regs. tit 15 § 79.24. Such vehicle inspections range in cost from $11.00 to $27.00. *See* Exhibit G (Form VS-77).

53. These mandatory taxes and fees are all part of the quantity of money that is required to buy and acquire possession of a vehicle in New York state.

54. By defining "Actual cash value" as "the amount that it would cost, at the time of loss, to buy a [comparable] vehicle" and providing that they will pay Actual Cash Value in the event of a total loss, Defendants, through the USAA Policy, is contractually obligated to pay these mandatory vehicle Purchasing Fees as part of their Collision and Comprehensive coverages.

55. Moreover, New York insurance regulations also require that an insurer with policy provisions requiring the payment of Actual Cash Value pay all amounts that are reasonably necessary costs to pay to replace the total loss vehicle with an item substantially identical to the damaged vehicle, including Purchasing Fees. N.Y. Comp. Codes R. & Regs, tit. 11 § 216.6(b)(2) ("Regulation 64"). A violation of Regulation 64 is also a violation of N.Y. Ins. § 2601 (the Unfair Claim Settlement Practices Statute).

56. Defendants breached the Policy contract with Plaintiffs and other Class members and also violated New York law by failing to pay full Purchasing Fees as part of the first-party claim payments for the total loss of these insureds' vehicles. Plaintiffs and the Classes do not dispute Defendants' assessment and payment of the amount of value of the total loss vehicles, *i.e.*, "Base Vehicle Value" and "Adjusted Vehicle Value". Rather, the Purchasing Fees at issue here are to be paid by Defendants in addition to their assessment and payment of the value of the total

loss vehicle.

## CLASS ALLEGATIONS

57. Plaintiffs bring this action respectively seeking representation of the Classes, defined below (each a "Class," and together, the "Classes"), pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may be deemed appropriate by the Court.

58. Plaintiff Bracamonte brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> **USAA Casualty Class:** All insureds, under any automobile insurance policy issued in the State of New York by USAA Casualty Insurance Company, with the same or materially the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a claim for total loss, and whose claim was adjusted as a total loss, within the six-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and were not paid full Purchasing Fees as part of their total loss insurance claim.

59. Plaintiff Forte brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> **Garrison Class:** All insureds, under any automobile insurance policy issued in the State of New York by Garrison Property and Casualty Insurance Company, with the same or materially the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a claim for total loss, and whose claim was adjusted as a total loss, within the six-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and were not paid full Purchasing Fees as part of their total loss insurance claim.

60. Excluded from the Classes are the Defendants, their officers, employees, agents and affiliates ("excluded persons"), their subsidiaries, legal representatives, heirs, successors and assigns, and any of Plaintiffs' counsel, their officers, employees, agents, legal representatives, heirs, successors, and assigns.

61. Although the precise number of members for each Class is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are among the largest motor vehicle insurers in the State of New York and write

millions of dollars of private-passenger physical-damage coverage premiums, the persons affected by Defendants' unlawful practice consists of thousands of individuals, or the persons affected for the Classes are otherwise so numerous that joinder of all Class members is impractical. Thus, numerosity of the Classes is established.

62. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for Plaintiffs and the Classes is satisfied for reasons articulated herein.

63. Plaintiffs' claims are typical to those of all members of the Classes because members of the Classes are similarly affected by Defendants' uniform failure to pay the cost to replace the insured vehicle with an item substantially identical to the damaged vehicle. N.Y. Comp. Codes R. & Regs, tit. 11 § 216.6(b)(2).

64. The material and relevant policy terms for each member of the Classes are substantially identical to the terms of Plaintiffs' Policies, as are the written claim settlement communications, such as the settlement statements, sent by Defendants to Plaintiffs and Class members. Further, Plaintiffs' and members of the Classes' legal claims arise from the same core practices, namely, the failure to make full ACV payments, including Purchasing Fees, for total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the members of the Classes. Plaintiffs suffered the same harm as all the other members of the Classes they seek to represent. Moreover, the applicable law is New York, and it is uniformly applicable to Plaintiffs and members of the Classes.

65. Plaintiffs' interests are coincident with and not antagonistic to those of other members of the Classes, nor are the Plaintiffs subject to any unique defenses.

66. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the Classes.

67. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in prosecuting and defending class actions. Plaintiffs' counsel have

successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include Purchasing Fees after total losses.

68. Plaintiffs' claims raise questions of law and fact common to all members of the Classes, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class members within the meaning of Rule 23(b)(3). The central issues in this litigation turn on interpretation of materially identical Policy provisions; thus, this case is well-suited for class-wide adjudication. Defendants and all Class members are bound by the same materially identical Policy terms and Defendants sent them materially the same written settlement communications. Said predominant common questions include, but are not limited to, the following: (a) whether, under the Defendants' standardized Policy language, Plaintiffs and Class members, whose total vehicle loss claims were approved by Defendants, are owed the full amount of Purchasing Fees; (b) whether Defendants are required under New York law to pay Purchasing Fees to insureds who suffer total losses to vehicles insured under Defendants' Policies; (c) whether Defendants breached their insurance contracts with the Plaintiffs and the Class members by failing to pay such Purchasing Fees upon the total loss of an insured vehicle; and (d) whether Defendants' total vehicle loss claim settlement payment did not include ACV Purchasing Fees for the loss of said vehicle.

69. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude

its maintenance as a class action.

70. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the Classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

71. Certification of the above Classes is also supported by the following considerations:

a. The relatively small amount of damages that members of the Classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the Classes are a party and which any question of law or fact in the subject action can be adjudicated; and

c. No difficulties would be encountered in the management of Plaintiffs' claims on a class action basis, because the Classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

72. Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Moreover, Defendants are continuing to pay new total loss vehicle claims under the same Policy provisions without paying full ACV Purchasing Fees. As described herein, Defendants have acted or refused to act on grounds that apply generally to the members of the Classes so that corresponding declaratory relief is appropriate as to the Classes as a whole, pursuant to Fed. R. Civ. P. 23(b)(2). Further, under Fed. R. Civ. P. 23(b)(1), prosecuting separate actions under these circumstances risks inconsistent or varying adjudications that could create incompatible standards of conduct for Defendants to follow, and/or adjudications for individual members of the Classes that could be dispositive of unnamed class members' claims and may substantially impair or impede their ability to protect their interests.

73. In the alternative, the action may be maintained as a class action with respect to particular issues, pursuant to Fed. R. Civ. P. 23(c)(4).

74. All conditions precedent to suit have occurred or been performed.

## COUNT I: BREACH OF CONTRACT

75. The allegations contained herein are incorporated by reference.

76. This count is brought by Plaintiff Bracamonte individually and on behalf of the USAA Casualty Class members against Defendant USAA Casualty Insurance Company and by Plaintiff Forte individually and on behalf of the Garrison Class members against Defendant Garrison Property and Casualty Insurance Company.

77. Plaintiffs were each a party to an automobile insurance contract with Defendants respectively as described herein. *See* Exhibit A. All members of the Classes were parties to an automobile insurance contract with Defendants containing materially identical terms.

78. The interpretation of Plaintiffs' and all members of the Classes' insurance Policies is governed by New York law.

79. Plaintiffs and all members of the Classes made a claim determined by Defendants to be a first-party total loss vehicle under the insurance policy and determined to be a covered claim.

80. Defendants, by paying the total loss vehicle claims, determined that Plaintiffs and each member of the Classes complied with the terms of their insurance policy contracts, and fulfilled all duties and conditions under their Policy to be paid on his or her total loss of vehicle.

81. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiffs and every member of the Classes were owed the Actual Cash Value of the vehicle, including full Purchasing Fees.

82. Defendants defined Actual Cash Value as the cost to buy a comparable vehicle, with substantially similar mileage and physical condition.

83. By promising to pay Plaintiffs and every member of the Classes the ACV of their total loss vehicles, Defendants promised to pay the Purchasing Fees of their vehicles, which would include applicable sales and county use taxes, transfer fees, title fees, and inspection fees under the

terms of the Policy and New York law.

84. Defendants failed to pay full Purchasing Fees to Plaintiffs and every member of the Classes.

85. Defendants' failure to provide the promised coverage constitutes a material breach of contract with Plaintiffs and every member of the Classes.

86. USAA utilizes the same or materially the same form Policy for all insureds within the State of New York, which promises to pay ACV in the event of a total loss. The payment of Purchasing Fees with ACV is also required pursuant to New York insurance regulations as detailed herein. By failing to pay full Purchasing Fees, Defendants not only breach the Policy contracts of Plaintiffs and the members of the Classes, but also perpetuate conduct that violates community standards for decency and fairness, and breach their duty of good faith and fair-dealing.

87. As a result of said breaches, Plaintiffs and the members of the Classes are entitled under Defendants' insurance Policies to sums representing the unpaid benefits owed for ACV Purchasing Fees, as well as costs, pre-judgment and post-judgment interest, declaratory relief, and other relief as is appropriate.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Classes request an award, relief and entry of a judgment, as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiffs be appointed representative of the Classes; and that Plaintiffs' counsel be appointed counsel of the Classes.

B. Compensatory damages in an amount to be determined at trial.

C. An Order declaring Defendants' conduct to be unlawful and in violation of the parties' Policy contracts and applicable New York law.

D. An Order awarding Plaintiffs their costs of suit, including and pre- and post-judgment interest.

E. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendants received as a result of the unlawful conduct alleged herein.

F. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

Dated: November 27, 2024                          By: s/ Joseph N. Kravec, Jr.

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

Joseph N. Kravec, Jr.
Ruairi McDonnell *
Kaitlyn M. Burns *
29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com
Email: rmcdonnell@fdpklaw.com
Email: kburns@fdpklaw.com

  and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Antonio Vozzolo
Andrea Clisura
**VOZZOLO LLC**
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
Email: aclisura@vozzolo.com

-and-

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400

**NORMAND PLLC**
Edmund Normand*
Christopher Hudon*
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
Email: ed@normandpllc.com
Email: ean@normandpllc.com
Email: christopher.hudon@normandpllc.com

*Counsel for Plaintiffs and
the Proposed Classes*

*Pro Hac Vice* to be filed